IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CHRISTA COOK, ET AL., | ) |
| Plaintiffs, | ) |
| | ) NO. 3:24-cv-00095 |
| v. | ) |
| | ) JUDGE RICHARDSON |
| CORECIVIC, INC., ET AL., | ) |
| Defendants. | ) |

MEMORANDUM OPINION AND ORDER

Pending before the Court is motion to dismiss (Doc. No. 60, "Motion") filed by Defendants CoreCivic, Inc., CoreCivic of Tennessee, Damon T. Hininger, Patrick Swindle, Jason Medlin, Vince Vantell, Tamekio Warren, Denita Jones, Eugene Sapp, Kashundra Brown, and Dasity Jones (collectively, "Defendants"). Via the Motion, Defendants request that this Court dismiss Plaintiffs' claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendants filed a memorandum in support of their Motion (Doc. No. 61, "Memorandum"), and Plaintiffs (as identified above and defined below) filed a response to the Motion. (Doc. No. 66, "Response'). Defendants then replied to Plaintiffs' Response (Doc. No. 67, "Reply") and thereafter filed a notice of supplemental authority in support of their Motion. (Doc. No. 68, "Supplemental Authority").

For the reasons set forth herein, the Motion is GRANTED.

PROCEDURAL BACKGROUND

Plaintiffs' claims originally were asserted in a single complaint (filed in this Court under case number 3:22-cv-00571) filed on behalf of multiple plaintiffs. The various claims were based on three different incidents (later called by the Court the Williams Incident, the Allen Incident, and the Brown Incident, respectively). The Williams Incident was the basis for claims asserted by

Brenda Williams, the Allen Incident was the basis for claims asserted by Plaintiffs (i.e., Christa Cook and Christa Derick Montgomery, each individually and as survivor and next of kin to Chriteris Allen), and the Brown Incident was the basis for claims asserted by Cameshia Kindred.

Defendants, along with their co-defendants named in the original complaint (Doc. No. 1), moved to sever the claims so that each incident would be the subject of a separate lawsuit. (Doc. No. 18). This Court granted that motion, ordering in essence that the claims be severed based on the incident involved, such that claims would be spread across three different cases. (Doc. No. 52). The Court ordered, among other things, that Plaintiffs file a complaint limited to the allegations for their own claims.[1] (*Id.* at 8). Per this Court's instructions, on January 16, 2024, Plaintiffs in this matter filed their complaint (Doc. No. 55, "Complaint"), which was assigned a new case number (i.e., 3:24-cv-00095, as noted above in the caption to the instant document).[2]

Via the Complaint, Plaintiffs Christa Cook and Christopher Derick Montgomery bring claims individually as survivors and next of kin to Chriteris Allen. In their Complaint, Plaintiffs name the following defendants: CoreCivic, Inc., CoreCivic of Tennessee, Damon T. Hininger, Patrick Swindle, Jason Medlin, Vince Vantell, Tamekio Warren, Denita Jones, Eugene Sapp, Kashundra Brown, and Dasity Jones.[3] (*Id.* at 2-3). Plaintiff's claims are based on alleged: 1)

---

[1] Plaintiff's Complaint at Doc. No. 55 serves as the operative complaint for purposes of this Motion, and reference to any counts refers to counts asserted in this complaint.

[2] The reason why the Complaint (i.e., the complaint that originated the case filed under the instant case number (3:24-cv-00095)) had such a high docket entry number (55 rather than 1) is that the entries from case number 3:22-cv-00571 were effectively imported as docket entries in this case and were assigned docket entries numbers based on their date of entry in that case, resulting in 54 docket entry numbers lower than the docket entry number for the Complaint.

[3] Defendant Hininger is the CEO of CoreCivic. Defendant Swindle is the COO of CoreCivic. Defendant Medlin is the Vice President of Facility Operations at CoreCivic. Defendant Vantell was the warden at Whiteville Correctional Facility ("WCF") at all times relevant. Plaintiffs allege that Defendant Warren was an assistant shift supervisor at WCF. (*Id.* ¶ 12). Defendant Denita Jones was a sergeant at WCF. Defendant Sapp was a unit manager at WCF. Defendants Brown and Dasity Jones were correctional officers at WCF.

violations of 42 § 1983 by all Defendants; 2) so-called *Monell* liability as to Defendant CoreCivic; 3) common law negligence on the part of Defendants CoreCivic, Byrd, and Curtis; 4) loss of consortium for which all Defendants allegedly are liable; and 5) violations of Tenn. Code Ann. § 1-3-121 by Defendant CoreCivic.[4]

FACTS[5]

Plaintiffs' allegations relate to Chriteris Allen's alleged murder at the hands of his cellmate, who (according to Plaintiffs) killed Allen by placing fentanyl on him on August 26, 2021, at Whiteville Correctional Facility ("WCF").[6] (*Id.* ¶ 17). Allen typically called his mother, Plaintiff Christa Cook, every morning around 6:30 a.m. to 7:00 a.m. (*Id.* ¶ 18). On the morning of August 26, 2021, however, Allen did not call his mother. (Id.). Based on this fact, Plaintiffs allege that Allen died somewhere between 5:30 a.m. and 7:00 a.m. (*Id.*).

---

[4] "CoreCivic" is used below to refer to CoreCivic, Inc. or its subsidiary, CoreCivic of Tennessee, or both; this is consistent with Plaintiffs' approach. (Doc. No. 55 ¶ 7). "CoreCivic officials" may include facility-level administrators and staff, and not just corporate executives at the C-suite level or the corporate board.

[5] The facts herein are taken from the Complaint (Doc. No. 55). For purposes of the instant Motion, the facts in the Complaint are accepted as true, except to the extent that they are qualified herein (as, for example, by "Plaintiffs allege") to denote that they are not being taken as true (because they are either legal conclusions or simply too conclusory to be accepted as true without supporting factual allegations that *can* be accepted as true) without but instead are set forth merely to make clear what a party claims to be true. Throughout this opinion, the Court forgoes any such qualifiers for any fact that it is accepting as true, stating those facts without qualification even though it is aware that any such (alleged) fact ultimately might not prove to be true.

If the Court indicates herein that it is not accepting a particular allegation as true, that does not necessarily mean that anything about the Court's outcome on, or analysis of, the instant Motion would have been different had the Court accepted the allegation as true.

[6] The Court declines to accept this fact as true because Plaintiffs have not alleged enough factual matter to make this serious allegation (or murder) plausible. For now the Court will accept as true Plaintiffs' implication that they somehow know what Allen's cellmate knew, and for now it will accept as true cellmate "knew that [Allen] had not moved since the early morning hours, yet he never notified guard staff." (*Id.* ¶ 21). But it declines to draw the inference that Plaintiffs have drawn base in part on these allegations—that the cellmate must have murdered Allen. Because it ultimately makes no difference whether the Court accepts this inference, the Court will forgo explaining why it refuses to accept it, except to say that it strikes the Court as only a *possible* inference, and not a plausible one as required under *Twombly* and *Iqbal* for it to be accepted as true.

CoreCivic officers discovered Allen's body around noon on the same date. (*Id.* ¶ 19). Officers failed to perform required, scheduled cell checks as scheduled, and that such failure caused the delay in discovering Allen's body. (*Id.* at ¶¶ 20, 22-23). On the day of Allen's death, only one guard was assigned to Allen's pod even though two or three were normally assigned to the pod. (*Id.* ¶ 22). This staffing issue was responsible for the missed cell checks. (*Id.* ¶ 22). Defendant Brown (a guard) failed to conduct a required security check, and Plaintiffs contend that another guards, Defendant Jones, also failed to conduct a required check of Allen's cell. (*Id.* at ¶¶ 22-23).[7] Plaintiff further alleges that "[h]ad Defendants Brown and Dasity Jones conducted a cell check at breakfast, as they were required to do, then [Allen]'s life could have been saved. (*Id.* ¶ 23). Plaintiffs assert that the fentanyl that killed Allen was brought into the prison by guards and that CoreCivic acted with deliberate indifference to the presence of drugs at WCF.

The remaining allegations in the Complaint allege in detail the alleged unconstitutional conduct at a corporatewide level. In support, Plaintiffs cite other lawsuits across various states that purport to establish CoreCivic's indifference to staffing issues, among other concerns, settlements related to some of these lawsuits, and audits that showed concerns of understaffing. (*Id.* ¶¶ 28-47). The Complaint sets forth Plaintiffs' claims under 42 U.S.C. § 1983, specifically asserting violations of the Eighth Amendment's prohibition against cruel and unusual punishment. Plaintiffs claim that Defendants acted with deliberate indifference to the health and safety of Chriteris Allen while he was incarcerated at the Whiteville Correctional Facility, resulting in his death. Specifically, the Complaint asserts that CoreCivic's failure to provide adequate staffing and to enforce necessary

---

[7] The Court accepts as true the allegation as to Defendant Brown because the Complaint supports this allegation by alleging a fact (regarding rigor mortis) that the Court believes it can accept as true. The same is not true as to Jones; the Complaint notes that Jones has stated in writing that she had indeed checked Allen's cell (at 10:15) a.m. but then declares that statement false in an entirely unsupported and conclusory manner.

security protocols, such as regular cell checks, directly contributed to the delay in discovering Allen's body and, ultimately, his death by fatal overdose.

Under the theory of deliberate indifference, Plaintiffs assert that the Defendants were aware of a substantial risk to Allen's safety but failed to take reasonable steps to address it. This includes the alleged failure to prevent drug smuggling into the facility. Plaintiffs allege systemic issues, including chronic understaffing and a culture of neglect within CoreCivic's management policies, which Plaintiffs argue created an environment wherein such risks were not only foreseeable but also exacerbated by the Defendants' actions and inactions.

In support of their assertions, Plaintiffs reference other lawsuits and audits that document CoreCivic's systemic neglect and failure to address security risks across its facilities. The Complaint in effect asserts that these past incidents help establish a pattern of behavior that contributed to the tragic death of Allen and the failure to protect him while in custody.

Based on these allegations, Plaintiffs bring three claims, each one against all Defendants. In Count One, they bring claims under § 1983 based on their alleged deliberate indifference to the health and safety of Allen in violation of his rights under the Eighth Amendment. And in Counts Two and Three, Plaintiffs bring claims under state law based on alleged gross negligence and negligence, respectively.

## LEGAL STANDARD

For purposes of a motion to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must take all the factual allegations in the complaint as true, as it has done above. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id.* A claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.* When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id.* at 679. A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss, nor are mere recitations of the elements of a cause of action sufficient. *Id.*; *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010), cited in *Abriq v. Hall*, 295 F. Supp. 3d 874, 877 (M.D. Tenn. 2018). Moreover, factual allegations that are merely consistent with the defendant's liability do not satisfy the claimant's burden, as mere consistency does not establish plausibility of entitlement to relief even if it supports the possibility of relief. *Iqbal*, 556 U.S. at 678.

In determining whether a complaint is sufficient under the standards of *Iqbal* and its predecessor and complementary case, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), it may be appropriate to "begin [the] analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. This can be crucial, as no such allegations count toward the plaintiff's goal of reaching plausibility of relief. To reiterate, such allegations include "bare assertions," formulaic recitation of the elements, and "conclusory" or "bald" allegations. *Id.* at 681. The question is whether the remaining allegations—factual allegations, *i.e.*, allegations of factual matter—plausibly suggest an entitlement to relief. *Id.* If not, the pleading fails to meet the standard of Fed. R. Civ. P. 8 and thus must be dismissed pursuant to Rule 12(b)(6). *Id.* at 683.

As a general rule, matters outside the pleadings may not be considered in ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6) unless the motion is converted to one for summary

judgment under Rule 56. Fed. R. Civ. P. 12(d). When a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment. *Doe v. Ohio State Univ.*, 219 F. Supp. 3d 645, 652-53 (S.D. Ohio 2016); *Blanch v. Trans Union, LLC*, 333 F. Supp. 3d 789, 791-92 (M.D. Tenn. 2018).

ANALYSIS

Under § 1983, a plaintiff must demonstrate that a government official acted with 'deliberate indifference' to a substantial risk of serious harm. This requires showing both an objective component (a substantial risk of harm) and a subjective component (the defendant's knowledge of and disregard for that risk). Specifically, Plaintiffs must show that the Defendants were aware of the risk to Allen's safety, and that they acted with a 'sufficiently culpable state of mind. As we move forward in analyzing whether Plaintiffs have met these requirements, it is necessary to evaluate the adequacy of the factual allegations to support these essential elements."

To further put the following discussion into context, the Court notes that Plaintiffs must establish certain elements to succeed on their § 1983 claim of deliberate indifference. Under the Eighth Amendment, which protects against cruel and unusual punishment, Plaintiffs must demonstrate that Defendants acted with deliberate indifference to a substantial risk of serious harm to Allen. Specifically, Plaintiffs need to establish two key components. The first component is that there existed an objectively serious risk to Allen's health and safety. This includes a condition or practice that posed a substantial risk of harm, such as the failure to conduct regular cell checks, the insufficient staffing levels, or the unchecked introduction of fentanyl into the facility.

The second component is subjective. The subjective component is that Defendants were subjectively aware of this (objectively serious) risk but failed to take appropriate action to mitigate or eliminate it. Plaintiffs must show that the Defendants knew about the risk of harm to Allen and

disregarded it by failing to act reasonably to prevent it. The Court assumes arguendo (to Plaintiffs' benefit) that that actionable failures could include the failure to staff the facility adequately, failing to conduct regular security checks, or allowing drug smuggling into the facility.

This two-component standard for deliberate indifference is crucial in determining whether Plaintiffs' claims can survive the motion to dismiss. This is because the factual matter alleged in the Complaint must plausibly suggest the existence of these two components.

A. <u>Plaintiffs Fail to Establish a § 1983 Claim</u>.

Section 1983 authorizes a federal action against any person who, "under color of state law, deprives [another] person of rights, privileges, or immunities secured by the Constitution or conferred by federal statute." *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012) (citations omitted); 42 U.S.C. § 1983. Accordingly, the Complaint must plausibly allege (1) a deprivation of a Constitutional or other federal right, and (2) that the deprivation was caused by a "state actor." *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014). Thus, to state a claim under § 1983, a plaintiff must, as a threshold matter, allege that he or she suffered a deprivation of a specific right secured by the Constitution or laws of the United States. *Id.* In addition, a plaintiff must show that the deprivation was caused by a person acting under color of state law.

The Court will begin by addressing the alleged liability of CoreCivic. Section 1983 liability cannot be predicated upon a respondeat superior theory, that is, based upon the actions of a supervisor's subordinates or upon a supervisor's mere failure to act. *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016) (citing *Iqbal*, 556 U.S. at 676).

Rather, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution. Each defendant must be personally involved in the unconstitutional action." *Pineda v. Hamilton Cnty.*, 977 F.3d 483, 490 (6th Cir.

2020) (internal quotation marks and citations omitted). Thus, a "failure to supervise, control or train the offending individual" is only actionable if "the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it" by "at least implicitly" authorizing, approving, or knowingly acquiescing in the misconduct. *Peatross*, 818 F.3d at 242 (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)).

As a private corporation operating a state prison, CoreCivic can be held liable under certain circumstances. *Powell v. Woodard*, No. 17-6212, 2018 WL 5098824, at *2 (6th Cir. May 21, 2018) (noting, in case in which CoreCivic was sued, that "a private corporation that operates a prison acts under the color of state law for purposes of § 1983").

But like any other entity potentially liable under §1983, CoreCivic cannot be held liable under § 1983 on a respondeat superior basis. *Street v. Corr. Corp. of Am.*,[8] 102 F.3d 810, 818 (6th Cir. 1996) . *Powell v. Woodard*, No. 17-6212, 2018 WL 5098824, at *2 (6th Cir. May 21, 2018). (noting that "a plaintiff may not sue such a corporation [i.e., CoreCivic] solely on the basis of respondeat superior liability"). Instead, Plaintiffs must allege a corporate policy, custom, or practice of the corporate defendant (here, CoreCivic) that directly caused the alleged constitutional violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

Plaintiffs argue that CoreCivic's understaffing created an environment in which rampant drug smuggling into prisons flourished, ultimately contributing to Allen's death..In analyzing the merits of Plaintiffs' claims, the Court must determine whether the allegations in the Complaint establish any Eighth Amendment violation by *someone*; if not, *Monell* liability is not possible because there is no basis for *any* liability under §1983, let alone *Monell* liability in particular.

---

[8] In citing *Street*, the Court finds it worth noting that CoreCivic formerly was known as Corrections Corporations of America.

This reality is brought home by a recent and very relevant case, *Caraway v. CoreCivic of Tenn., LLC*, 98 F.4th 679 (6th Cir. 2024). There, the Sixth Circuit did not address *Monell* liability first, but instead first focused on whether the plaintiff had adequately alleged an Eighth Amendment violation.. Once the court found (for reasons discussed below) that the plaintiffs failed to state an Eighth Amendment violation, the court noted that the *Monell* claims failed because "the complaint doesn't allege an underlying constitutional violation." *Id.* at 687.

In *Caraway*, the plaintiff was the mother (and contemporaneously, the estate) of an inmate who had died in CoreCivic custody due to a fentanyl overdose. She, like Plaintiffs here, brought (on behalf of his estate) deliberate-indifference claims, which the Sixth Circuit alternatively calls "failure to protect" claims. *Id.* at 683. The plaintiff alleged that CoreCivic's staffing shortages led to inadequate screening of prison guards, allowing corrupt employees to smuggle in illicit drugs, which, in turn, resulted in the inmate's fatal fentanyl overdose. Setting aside for the moment whether the plaintiff adequately alleged *any* Eighth Amendment violations by *anyone that could make* someone liable, the Court will discuss what the Sixth Circuit said about whether *CoreCivic* could be held liable based on the plaintiff's allegations.

As to CoreCivic's liability (which as indicated above would necessarily be *Monell* liability), *Caraway* (like myriad prior cases) makes clear, *Monell* liability is dependent on the existence of an underlying constitutional violation (by *someone*). If no such violation is plausibly alleged, the corresponding *Monell* claims necessarily fail.

Thus, before the Court can address whether CoreCivic can be held liable under *Monell*, it must first determine whether Plaintiffs have adequately alleged an Eighth Amendment violation by *someone* (i.e., by one or more of the individual Defendants)—that is, adequately alleged the above referenced two components. To have done so, Plaintiffs must have alleged factual matter

plausibly suggesting (i) that there existed an objectively serious risk to Allen's health and safety; and (ii) Defendants were subjectively aware of this (objectively serious) risk but failed to take appropriate action to mitigate or eliminate it. Notably, the second component needs to be determined on a Defendant-by-Defendant basis; even if the first component is plausibly alleged, a valid claim has not been asserted against a particular individual Defendant unless the second component exists as to that Defendant. On the other hand, if a claim *is* plausibly asserted against even *one* individual Defendant, *Monell* liability potentially could exist for CoreCivic.

In *Caraway*, the Sixth Circuit, affirming the district court's dismissal on Rule 12(b)(6) grounds, rejected the plaintiff's Eighth Amendment deliberate-indifference claim (which the court called a "failure-to-protect" claim)[9] held that the plaintiff did not adequately allege the commission of the asserted Eighth Amendment violation by anyone. That is, the Court asked whether the plaintiff had "allege[d] facts plausibly showing two components," 98 F.4th at 683, then answered the question in the negative.

First, the court noted that the seriousness of the risk of harm was to be measured by the *seriousness of the risk itself*, and not be the seriousness of what happened to the inmate (such as death by overdose) because that' risk ultimately happened to be realized. *Id.* at 685. This is because "[t]he relevant constitutional "injury' is the exposure to an objectively excessive risk, *not* any physical harm that befalls the inmate because of that risk." *Id.* The court then noted that "that principle of constitutional injury has implications for § 1983's causation requirement in this context." *Id.* And turning to §1983's causation requirement. the court explained that "the plaintiff must show that the defendants' unconstitutional act or omission failed to alleviate the excessive

---

[9] *See* 98 F.4th at 683.

risk [the deceased inmate] faced." *Id.*[10] Given the plaintiff's theory in that particular case, that meant that the plaintiff "must allege facts supporting the conclusion that the defendants' understaffing caused drugs to proliferate at Whiteville." *Id.* at 685-86.

The court held that the plaintiff failed to do so. The court explained that although understaffing may correlate with increased drug activity in the prison, a mere correlation does not establish a causal link between CoreCivic's staffing decisions and the specific harm that occurred. The court emphasized that to succeed on a deliberate-indifference (i.e., failure-to-protect) claim, the plaintiff must demonstrate that CoreCivic's staffing policies *directly led* to the harm suffered by the inmate, and not merely that a generalized correlation exists between those policies and that harm. As the court explained, a plaintiff must present specific, non-conclusory allegations that directly connect the alleged constitutional violation to the particular constitutional injury, rather than relying on generalized statements about the correlation between staffing levels and prison conditions. *See Caraway*, 98 F.4th at 685-86; *id.* at 686 ("The allegation that intentional understaffing caused drug proliferation at Whiteville is thus nothing more than a 'the-defendant-unlawfully-harmed-me accusation,' which the district court properly rejected." (quoting *Iqbal*, 556 U.S. at 678).

For these reasons, the court held that the plaintiff failed to adequately allege an objectively serious risk of harm. *Id.* at 686.[11]

---

[10] In one place, the court seemed to suggest that the plaintiff must show that the defendants' unconstitutional act or omission caused the deceased inmate's *overdose. See id.* at 686 ("The complaint, for example, never explains what inmate-inspection protocol Tennessee law requires, much less how any violation caused Caraway's overdose."). But based on everything else in *Caraway*, the Court disregards any such suggestion.

[11] In so holding, the court was clearly treating a failure to plausibly allege *causation between* an alleged failure to protect and the alleged constitutional injury (i.e., the objectively serious risk of harm) as a failure to plead an objectively serious risk of harm. That is, in *Caraway*'s reasoning, even if an objectively serious risk of harm is *otherwise* adequately alleged, it must be treated as not adequately alleged unless

The allegations closely mirror those in the present case, where Plaintiffs contend that understaffing facilitated unchecked drug smuggling, leading to Allen's exposure to fentanyl and eventual death. Plaintiffs here, much like in *Caraway*, fail to allege non-conclusory facts demonstrating that CoreCivic's staffing policies directly caused Allen's death. Instead, their claims rely on broad allegations that CoreCivic prioritizes profit over safety and, as a result, deliberately operates with fewer officers than necessary. In *Caraway*, the court held that such corporate-level allegations, without particularized facts tying the understaffing to the proliferation of drugs at *the inmate's particular facility*, fail to state a plausible claim for relief under § 1983. *Id.* at 686. Likewise, here, Plaintiffs cite audits and reports criticizing CoreCivic's staffing decisions, but they do not connect these general criticisms to the alleged risk (from drugs) faced by Allen in particular. And, like the plaintiff in *Caraway*, Plaintiffs rely on a speculative theory: they allege that CoreCivic's chronic understaffing enabled guards to smuggle in fentanyl, which then made its way to Allen's cell, resulting in his death. However, as in *Caraway*, there is no factual allegation directly connecting CoreCivic's staffing decisions to the specific risk faced by Allen. Plaintiffs do not provide any concrete facts demonstrating how the alleged staffing shortages led to drug proliferation within the facility or how CoreCivic's policies enabled specific guards to smuggle drugs.

As a reminder, the Sixth Circuit in *Caraway* was not specifically analyzing whether CoreCivic could be liable (under *Monell*) for any constitutional violations, but rather whether the plaintiff had adequately alleged a constitutional violation (by anyone at all) in the first place. If

---

the plaintiff (also) adequately alleges causation between the alleged failure to protect and the alleged objectively serious risk of harm. The Court herein proceeds accordingly.

not, of course, *no* defendant (whether CoreCivic or an individual defendant) could by liable under §1983.

The broader point here is that Plaintiffs' deliberate-indifference claims fail against all Defendants, as did the plaintiff's claims in *Caraway*, because Plaintiffs have not alleged factual matter that plausibly suggests an objectively serious risk of harm. *See Caraway*, 98 F.4th at 686 ("[The Plaintiff's complaint fails to adequately plead an objectively serious risk of harm. That's enough to sink its Eighth-Amendment claim.").

Even if Plaintiffs have plausibly alleged an objectively serious risk of harm, their claims fail because they do not satisfy the subjective component of an Eighth Amendment violation. *Caraway* held that a plaintiff must plead facts demonstrating that prison officials were actually aware of a serious risk of harm and deliberately disregarded it. *Id.* at 687. The court found that even though the plaintiff in *Caraway* alleged that CoreCivic officials were aware of drug problems within the facility, he failed to provide any specific facts about how, when, or through what means CoreCivic officials obtained that knowledge. *Id.*

Plaintiffs' allegations here suffer from the same deficiency. They assert in broad terms that CoreCivic knew about drug smuggling and failed to prevent it, but they do not allege any specific facts demonstrating that CoreCivic officials were aware of a particularized risk to Allen (e.g., a risk specific to his place of incarceration while he was there) and yet deliberately ignored it. *See id.* at 687. In fact, Plaintiffs rely largely on the same 2017 and 2020 audits that *Caraway* expressly rejected as insufficient to demonstrate subjective awareness.

Moreover, the court in *Caraway* noted that CoreCivic had taken remedial steps in response to staffing shortages and drug concerns, making it difficult to infer deliberate indifference. *Id.* Here, Plaintiffs acknowledge that CoreCivic had security measures in place at WCF, including

policies requiring cell checks and searches for contraband. Although Plaintiffs argue that these policies were inadequately enforced, they fail to allege facts showing that CoreCivic officials intentionally ignored known risks to Allen (or, for that matter, any inmates at WCF). Plaintiffs have not alleged sufficient facts to show that CoreCivic's staffing policies directly caused Allen's death. Instead, their claims rely on generalized allegations of corporate-wide failures, which are insufficient to sustain a *Monell* claim.

B. <u>Plaintiffs Fail to State Supervisory Liability Claims Against Individual Defendants.</u>

From what the Court can tell, it appears that Plaintiffs may seek to impose supervisory liability on certain individual defendants. But because the Complaint does not allege an underlying constitutional violation, any claims of supervisory liability fail. *See Payne v. Sevier Cnty.,* No. 3:14-CV-346-PLR-CCS, 2016 WL 552351, at *7 (E.D. Tenn. Feb. 10, 2016), *aff'd,* 681 F. App'x 443 (6th Cir. 2017) (collecting cases for the proposition that supervisory liability under § 1983 cannot attach where there is no underlying constitutional violation).

C. <u>The Court Declines to Exercise Supplemental Jurisdiction Over the State-Law Claims.</u>

Plaintiffs also assert several state law claims against Defendants. A district court "may decline to exercise supplemental jurisdiction" if it "has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3); see also *Ford v. Frame*, 3 F. App'x 316, 318 (6th Cir. 2001) ("[D]istrict courts possess broad discretion in determining whether to retain supplemental jurisdiction over state claims once all federal claims are dismissed."). The Supreme Court has noted that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *see*

*also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("[A] federal court that has dismissed a plaintiff's federal-law claims should not ordinarily reach the plaintiff's state-law claims.").

Having granted Defendants' Motion to Dismiss with respect to Plaintiffs' federal claims (over which the Court has original jurisdiction), and because the aforementioned factors weigh in favor of declining jurisdiction over Plaintiffs' state-law claims, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state-law claims. Instead, the Court dismisses them without prejudice. Plaintiffs may seek to refile them in a Tennessee state court, although the Court expresses no opinion about how those claims might fare in state court.

CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' Motion to Dismiss. (Doc. No. 60). Plaintiffs' federal claims are DISMISSED with prejudice.

The Court, in its discretion declines to exercise jurisdiction over Plaintiffs' state-law claims pursuant to 28 U.S.C. § 1367(c)(3), and Plaintiffs' state-law claims will be DISMISSED without prejudice.

The Clerk is directed to enter judgment under Rule 58 of the Federal Rules of Civil Procedure and close the file.

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE